UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:21-CR-33-HAB |
| ) | |
| JAMAL D. TYLER ) | |

**OPINION AND ORDER**

Defendant pleaded guilty in June 2021 to a single count of being a felon in possession of a firearm. The draft presentence investigation report assessed a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), finding that Defendant "used or possessed any firearm or ammunition in connection with another felony offense (Intimidation)." (ECF No. 25 at 8). Defendant objected to the enhancement. (ECF No. 28). An evidentiary hearing was held (ECF No. 35) and the matter is fully briefed (ECF Nos. 38, 39, 44).

**I.      Factual Background**

Although several incidents were testified to at the evidentiary hearing, the Government's brief focuses on a single interaction between Riley Bennett ("Riley") and Defendant in March 2021. Riley, a sixteen-year-old girl, was manning the counter at Pizza by Vito's ("Vito's") in the early morning hours. After closing, Defendant and his girlfriend entered the restaurant and tried to order food. Riley told the couple that the restaurant was closed. Defendant was "fine" with the restaurant being closed but wanted to tell Riley something before he left. Defendant then said, "Your boss, the white dude that drives that big ass truck, he's a bitch." Riley's boss, also her father, watched the encounter from his office on a closed-circuit television screen.

Riley didn't appreciate Defendant calling her father a bitch and disagreed with Defendant's assessment. Defendant then backed up, pulled up his hoodie, and showed Riley a firearm. It sounds as if Defendant says, "tell him I have something for him," but the video is less than clear.

Defendant "wasn't scared for [herself], but [she] was scared for [her] dad." (*Id.* at 15–16). Defendant said nothing more and left the restaurant. With the danger gone, Riley's father finally emerged from his office. No one called the police to report this incident.

## II.   Legal Analysis

United States Sentencing Guideline 2K2.1(b) calls for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. 2K2.1(b)(6)(B). "Another felony offense" means "any federal, state, or local offense . . . punishable by imprisonment of more than a year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.*, cmt. 14(C). The enhancement applies "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." *Id.*, cmt. 14(A).

According to the Government, the qualifying felony offense for Defendant was Intimidation, a Level 5 felony under Indiana law. The elements of that offense require the Government to prove that Defendant: (1) communicated a threat; (2) with the intent that another person be placed in fear of retaliation for a prior lawful act; and (3) that while committing the act, Defendant drew or used a deadly weapon. Ind. Code § 35-45-2-1(a)(2); (b)(2)(A). The Government must prove these elements by a preponderance of the evidence. *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir. 1997).

As for the first element, Defendant argues that no threat was communicated, analogizing this case to *Gaddis v. State*, 680 N.E.2d 860 (Ind. Ct. App. 1997). There, the Indiana Court of Appeals concluded that merely displaying a firearm is not a threat under the Intimidation statute.

2

In that case, two motorists exchanged gestures in a bout of road rage, with Gaddis upping the ante by briefly displaying a handgun. Finding no violation of the statute, the Court of Appeals stated:

> We do not condone the flashing of a weapon on our public roads. Confrontations between angry motorists threaten public peace and safety. The display of a firearm to another motorist while traveling in close proximity at a high rate of speed is foolish, but it is not in itself unlawful under the statute. We hold that under the intimidation statute the mere display of a handgun does not express an intention to unlawfully injure a person or his property.

*Id*. at 862. This decision rested, at least in part, on Gaddis' constitutional right to bear arms. *Id*.

Assuming, without deciding, that *Gaddis* properly construes the Intimidation statute, this case does not involve "the mere display of a handgun." Defendant called Riley's father a "bitch," and, upon displaying the firearm, told Riley that he "had something" for her father. These statements bring this case within the Indiana Supreme Court's holding in *Johnson v. State*, 743 N.E.2d 755 (Ind. 2001). There, the court stated:

> Thus, where as here the record shows the existence of words or conduct that are reasonably likely to incite confrontation, coupled with the display of a firearm, we are hard pressed to say that such facts are insufficient to prove that a threat has been communicated within the meaning of the intimidation statute.

*Id*. at 756–57.

Defendant's statements were fighting words. Defendant wasn't calling Riley's father a female dog. He used the word as "a generalized term of abuse and disparagement for a woman."[1] The "something" he had for Riley's father was not a hug, a box of chocolates, or a diamond pony. It was a gun full of bullets. While the emotions here were not as heated as those in *Johnson*, this does not change the inflammatory nature of Defendant's words. These statements, coupled with the display of a firearm, prove the existence of a threat by a preponderance of the evidence.

---

[1] https://www.merriam-webster.com/dictionary/bitch

The last element is easily demonstrated. "Use of a deadly weapon," as used in the Intimidation statute, includes brandishing and displaying a firearm. *Daniels v. State*, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011). Defendant displayed his firearm to Riley. That act was "use" of a deadly weapon.

The Court is not so persuaded that Defendant intended to place someone else in fear of retaliation for a prior lawful act. To make this showing, the Government must prove "a clear nexus between the prior lawful act and the defendant's threat." *Merriweather v. State*, 128 N.E.3d 503, 516 (Ind. Ct. App. 2019). Here, the Government asserts that the prior lawful act was Riley's refusal to serve Defendant after the restaurant was closed. The Government must prove, then, a clear nexus between denying Defendant pizza and his threat to shoot Riley's father.

The evidence does not show this clear nexus. First, there is no evidence that Defendant was even upset about being refused service. To the contrary, Riley testified that "he was fine with it." (ECF No. 37 at 9). The Government does not explain, and the Court cannot imagine, how Defendant went from "fine with it" to threatening murder in thirty seconds if the only slight against him was Riley's statement that the restaurant was closed.

Second, the threat wasn't directed towards the person who refused Defendant his slice of pepperoni. Riley's father didn't refuse Defendant service; Riley did. Again, the Government does not explain why Defendant would take his rage out on an absent manager when the object of his scorn was directly in front of him. If someone would be threatened with the gun in this scenario, it should have been Riley.

Defendant's threat was prompted by *something*. Was it the verbal altercation between Defendant and Riley's brother that occurred earlier that day? This was testified to by each Bennett

4

yet disregarded in the Government's brief.[2] Was it some earlier altercation between Defendant and Riley's father? Was it drunken bravado? The Court does not know. What it does know, however, is that it had nothing to do with Riley's refusal to reopen the restaurant after it had closed. Since this is the only "prior lawful act" that the Government identifies, the Court finds that the Government has failed to prove Intimidation, and by extension the validity of a U.S.S.G. § 2K2.1(b)(6)(B) enhancement, by a preponderance of the evidence.

### III.    Conclusion

For these reasons, the Court SUSTAINS Defendant's objection to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Probation is DIRECTED to prepare a revised presentence investigation report reflecting this ruling.

SO ORDERED on January 13, 2022.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[2] By marrying itself to the video to the exclusion of the Bennetts' testimony, the Government effectively concedes what was obvious to those in attendance at the hearing: their testimony, and particularly that of Riley's father and brother, was less than convincing. As the Government expressly concedes, there were discrepancies in their testimony "regarding the timing of when they believe the events occurred, what they individually saw and heard, the number of cameras at the business and whether or not there is a video of the incident which occurred on the date of [Defendant's] arrest." (ECF No. 39 at 14). The Court suspects that these discrepancies are the reason for the Government's focus on the refusal of service rather than some other, more logical, cause for the threats.